UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD D. BRINK,

               Petitioner,

    -vs-

JAMES T. CONWAY,

               Respondent.

**DECISION AND ORDER**

**No. 07-CV-6032T**

_____

## I.   Introduction

*Pro se* petitioner, Richard Brink ("Petitioner"), has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered May 13, 2003, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of four counts of Rape in the Second Degree (N.Y. Penal Law ("Penal Law") § 130.30[1]), and four counts of Criminal Contempt in the Second Degree (Penal Law § 215.50[3]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

The rape charges arise out of four separate incidents that occurred during the months of November and December 2002, wherein thirty-seven-year-old Petitioner had sexual intercourse with fourteen-year-old A.H. ("A.H." or "the victim").  Petitioner had

met A.H. through his girlfriend, Kelly Botcha ("Botcha" or "Petitioner's girlfriend"), who was a friend of A.H.'s.

The criminal contempt charges arise out of an Order of Protection that was issued against Petitioner, prohibiting him from contacting the victim. After the Order was issued, Petitioner called the victim repeatedly from jail in an attempt to convince her not to assist the prosecution. These conversations were recorded and later used against Petitioner at trial.

A Monroe County grand jury charged Petitioner with four counts of rape in the second degree and four counts of criminal contempt in the second degree. Petitioner plead not guilty and was tried before a jury.

At trial, A.H. testified as to the four separate acts of sexual intercourse between her and Petitioner, explaining that said acts were consensual and that she still cared for Petitioner and did not want to testify against him. Trial Transcript [T.T.] 165, 178-179, 181. On cross-examination, A.H. admitted to the following: that she was angry at Botcha because she had had a child with Petitioner; that she was afraid if she did not testify she would be arrested and put in jail; and that she had been in Family Court for failing to attend school. T.T. 179-180.

The People also presented evidence of another teenager, M.A., who testified that Petitioner had told her he had sex with A.H. T.T. 213-214.

Petitioner testified in his own defense. He denied that he engaged in sexual intercourse with A.H., claiming that she had made up the story out of anger and jealousy because A.H. and Botcha were lesbian lovers. T.T. 256-267.

Petitioner was found guilty as charged, and was sentenced to three to six years in prison on each rape count and one year on each criminal contempt count. The trial court ordered that the sentences it imposed on two of the rape counts run consecutively to the sentences it imposed on the remaining rape counts. Sentencing Minutes 11-13.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed on June 9, 2006. People v. Brink, 30 A.D.3d 1014 (4th Dep't 2006). Leave to appeal to the New York State Court of Appeals was denied on August 2, 2006. People v. Brink, 7 N.Y.3d 810 (2006).

During the pendency of Petitioner's direct appeal, Petitioner filed two New York Criminal Procedural Law ("CPL") § 440.10 motions to vacate the judgment of conviction. Both of these motions were denied, and leave to appeal was also denied. See Decision and Order of the Supreme Court, Monroe County, Ind. No. 10-2003, dated 08/20/04; Decision and Order of the Supreme Court, Monroe County, Ind. No. 10-2003, dated 07/10/06.

This habeas petition followed.

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision.  Williams, 529 U.S. at 412;  accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable

application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340

(2003).

**B.   Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A);  see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999);  accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

**C.   The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v.

Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Petitioner's Claims

## 1. INEFFECTIVE ASSISTANCE OF COUNSEL (GROUNDS ONE AND SEVEN)

Petitioner contends that he was denied effective assistance of counsel based on, *inter alia*, the following grounds: (1) defense counsel's ineffective cross-examination of prosecution witness M.A.; (2) failure to "take advantage of evidentiary rules . . . to insulate Petitioner from highly prejudicial references to uncharged crimes;" and (3) for delivering "an ineffectual opening statement." Petition [Pet.] ¶13, Grounds I and VII. Petitioner raised this claim on direct appeal, and the Appellate Division rejected it on

the merits.

It is well-settled that a petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668 (1984); Aparicio, 269 F.3d at 95. A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

First, Petitioner contends that he received ineffective assistance due to counsel's ineffective cross-examination of M.A. In particular, he argues that counsel "neglected to attempt to discredit or otherwise address [her] critical testimony that Petitioner had confessed to her to having sex with the [victim]." Pet. ¶13, Ground I, Page 7. Petitioner asserts that counsel's

cross-examination of M.A. "was comprised of three pointless questions . . . ." Id. At the outset, the Court notes that decisions whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature, and, if reasonably made, will not constitute a basis for an ineffective assistance claim. See United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). Petitioner has failed to show how Petitioner's decision to cross-examine M.A. -- and the manner in which he did so -- was unreasonable, given the facts and circumstances of the case. Indeed, Petitioner's cross-examination of M.A. was brief, consisting of several seemingly non-probative questions related to whether M.A. had spoken to the district attorney or any police officers about her testimony. However, when read in context, this brief cross-examination was preceded by an equally brief direct examination of M.A., in which she testified to the following: that she was fourteen-years old; that she had known Petitioner for several years; that she had lived with Petitioner for about six months in 2002; that during that six month period the victim came over to Petitioner's home; and that Petitioner had told her that he was having sex with A.H. T.T. 211-214. In this context, it was not unreasonable for counsel to employ a brief, innocuous line of questioning to divert attention away from the damaging testimony that was elicited on direct examination. Because Petitioner has failed to meet the

reasonableness prong of <u>Strickland</u>, this Court need not address the prejudice prong. <u>See</u> <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.'") (alterations in original) (quoting <u>Strickland</u>, 466 U.S. at 697)).

Next, Petitioner contends that he was deprived of his Sixth Amendment right to counsel because counsel "failed to protect Petitioner at trial against impermissible references to uncharged criminal activity." Pet. ¶13, Ground I, Pages 9-13. This contention is based, *inter alia*, on the grounds that defense counsel failed to obtain a pre-trial <u>Molineux</u>[1] ruling on the introduction of testimony from one of the prosecution's witnesses, Shawn McNulty ("McNulty"), concerning his observations of Petitioner's romantic conduct toward the victim. This claim fails for two reasons. First, as a preliminary matter, McNulty's testimony was not <u>Molineux</u> evidence in that it did not speak to Petitioner's prior bad acts or crimes. T.T. 5-6. Rather, McNulty's testimony was based on his observations of times when Petitioner and the victim were engaged in romantic embraces or had been scantily clad together. To that extent, counsel's decision not to pursue a <u>Molineux</u> ruling prior to trial cannot be viewed as

---

[1] <u>People v. Molineux</u>, 168 N.Y. 264 (1901) (admissibility of evidence of prior crimes to show motive, intent, absence of mistake or accident, common scheme or plan, or identity of person on trial).

unreasonable.  Second,  the record reflects that counsel did object to the testimony and argued against its admission.  The trial court preliminarily permitted McNulty to testify, but ultimately precluded the jury's use of his testimony because McNulty was unable to conform his testimony to the indictment (i.e., state with some particularity the dates and times when he had observed romantic conduct between Petitioner and the victim).  T.T. 208. Thus, the Court cannot find that Petitioner was provided with fundamentally defective assistance when counsel aptly objected to McNulty's testimony and ultimately succeeded in precluding its admission.

Finally, Petitioner argues that he received ineffective assistance of counsel due to counsel's delivery of a "perfunctory" opening statement.  Pet. ¶13, Ground I, Page 15.  More specifically, he asserts that, "[d]efense counsel's opening statement was deficient as it was cursory and failed to advance a defense theory."  Id.  Indeed, the record reflects that counsel delivered a brief and concise opening statement, occupying less than two pages of the trial transcript.  However, Petitioner has failed to overcome the presumption that counsel's decision to do so, under the circumstances, was unreasonable.  That is, it is likely that counsel simply refrained from revealing a great deal of information about the case in his opening statement for purposes of seeing how the evidence against Petitioner played out at trial.

And, notably, counsel delivered a lengthy and eloquent closing statement where he zealously argued Petitioner's innocence, citing weaknesses in the People's case. The Court therefore cannot find that counsel's decision to deliver a concise statement, or that such statement was focused more on the jury's duty to pay close attention to the evidence presented at trial rather than on Petitioner's innocence, was an unreasonable tactical decision. Because Petitioner cannot meet the reasonableness prong of Strickland, the Court need not address the prejudice prong. See Greiner, 417 F.3d at 319.

Accordingly, the state court's determination of this issue was neither contrary to nor an unreasonable application of settled Supreme Court law. The claim is dismissed.

## 2. PROSECUTORIAL MISCONDUCT/IMPROPER INTRODUCTION OF PETITIONER'S UNCHARGED CRIMES AND PRIOR BAD ACTS (GROUND THREE)

Petitioner contends that he was deprived his constitutional right to a fair trial by the misconduct of the prosecutor in referring to Petitioner's uncharged crimes and bad acts during his opening statement. Pet. ¶13, Ground III. Petitioner raised this claim on direct appeal, and it was rejected on state procedural grounds for failure to preserve the issue for appellate review. Brink, 30 A.D.3d 1015. The Appellate Division's reliance upon a state procedural rule to dismiss Petitioner's claim precludes federal habeas review of it. See Coleman, 501 U.S. at 729-30; Harris v. Reed, 489 U.S. 255, 260-61 (1989).

A habeas court may not review a federal issue when the last state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. 722 at 729. It is well-settled law that New York's contemporaneous objection rule (codified at CPL § 470.05(2)) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). Here, the Appellate Division relied on CPL § 470.05(2) to find that Petitioner failed to properly preserve his prosecutorial misconduct claim. This finding demonstrates that the state court's decision on this issue rested on an adequate and independent state procedural rule that bars federal habeas review of the issue by this Court.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). A petitioner establishes cause for a default when he shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. To satisfy the

prejudice prong, petitioner must show not merely a possibility of prejudice, but that the alleged error worked to his actual and substantial disadvantage." Cappiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) (internal quotation marks and citation omitted).

Here, Petitioner alleges ineffective assistance of counsel as the cause for the default. Petitioner's Memorandum of Law in Support of a Writ of Habeas Corpus [Memo.], Pages 18-20. A claim of ineffective assistance of counsel may establish cause for a procedural default. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991). However, "[n]ot just any deficiency in counsel's performance will do . . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution . . . . Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." Murray, 477 U.S. at 488-489. As discussed under Section "IV, I" above, Petitioner cannot make out a successful ineffective assistance of counsel claim. Further, he makes no showing of the requisite prejudice, except for a generalized assertion that he was denied a fair trial as a result. See Memo., Pages 19-20. Moreover, Petitioner has failed to show how this Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, habeas relief is not available to Petitioner and

the claim is dismissed.

**3.  CONFRONTATION CLAUSE VIOLATION/DEPRIVATION OF RIGHT TO PRESENT
A DEFENSE (GROUND TWO)**

Petitioner contends that he was denied his constitutional
right to confront his accuser and his right to present a defense
when the trial court prohibited him, pursuant to New York's Rape
Shield law, from cross-examining the victim about her prior sexual
relationship with Botcha.  Pet. ¶13, Ground II;  Memo., Page 14.
Petitioner raised this claim on direct appeal, and it was rejected
on the merits.

In the habeas petition and Petitioner's supporting memorandum,
Petitioner characterizes this claim as a constitutional deprivation
of his right to confrontation and his right to present a defense.
However, the substance of the claim is that the trial court made an
erroneous ruling under CPL § 60.42, New York's Rape Shield law.
That law provides that evidence of a victim's past sexual
encounters is generally inadmissible at a rape trial, unless
certain exceptions are met.[2]  Such a claim -- which is a matter of

---

[2]     CPL § 60.42 provides:

Evidence of a victim's sexual conduct shall not be admissible in a prosecution
for an offense or an attempt to commit an offense defined in article one
hundred thirty of the penal law unless such evidence:

   1. proves or tends to prove specific instances of the victim's prior
sexual conduct with the accused; or

   2. proves or tends to prove that the victim has been convicted of an
offense under section 230.00 of the penal law within three years prior to the
sex offense which is the subject of the prosecution; or

   3. rebuts evidence introduced by the people of the victim's failure to

state evidentiary law -- is insulated from review by this Court. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. Thus, it is outside the purview of this Court to determine whether the trial court misinterpreted or misapplied New York's Rape Shield law when it precluded Petitioner from cross-examining the victim about her prior sexual history with Botcha. Such a claim does not present a federal question for which habeas relief is available. See Estelle, 502 U.S. at 67-68; see e.g., Rasmussen v. Filion, (recognizing that the state court's

---

engage in sexual intercourse, deviate sexual intercourse or sexual contact during a given period of time; or

4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or

5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement by the court of its findings of fact essential to its determination, to be relevant and admissible in the interests of justice.

interpretation of New York's Rape Shield Law is beyond the purview of federal district court's review).  This Court therefore is limited to the question whether the trial court's ruling deprived Petitioner of a fundamentally fair trial.  See Washington v. Scriver, 255 F.3d 45, 56 (2d Cir. 2001) ("state evidentiary rules cannot be inflexibly applied in such a way as to violate fundamental fairness").  Petitioner contends that he should have been permitted to cross-examine the victim about a past lesbian encounter because such testimony would have been probative of the victim's motive to fabricate the charges against him.  The trial court's decision preventing him from doing so, he argues, abridged his right to present a complete defense.  The Court rejects this contention.

The record reflects that although Petitioner was precluded from cross-examining the victim specifically about her prior sexual relationship with Botcha, he was still able to cross-examine her on other aspects of her testimony that weighed in on her credibility. The record shows that the trial court permitted Petitioner's counsel to explore the issue of the victim's jealousy of Botcha's relationship with Petitioner without specifically mentioning the alleged sexual nature of their relationship.  The record shows that counsel took advantage of the opportunity to do so by vigorously cross-examining her on this subject.  T.T. 179-188.

Finally, the Court notes that Petitioner has not cited

relevant caselaw, nor is the Court aware of, any Supreme Court precedent that contravenes the Appellate Division's adjudication of this claim.

Accordingly, there are no grounds upon which to grant Petitioner habeas relief, and the claim is dismissed.

## 4. SELECTIVE PROSECUTION (GROUND FIVE)

Petitioner contends that he was the victim of selective prosecution insomuch as Botcha, who also allegedly engaged in sexual acts with the minor victim, was never arrested or charged in the matter.[3] Pet. ¶13, Ground V. Petitioner raised this claim on direct appeal in his pro se supplemental brief, and the Appellate Division rejected it on the merits.

It is well-settled that the "Attorney General and United States Attorneys retain broad discretion to enforce the Nation's criminal laws." United States v. Armstrong, 517 U.S. 456, 464 (1996) (internal citations omitted). The Supreme Court has noted that in the ordinary case, as long as the prosecutor has "'probable cause'" to believe that the accused committed an offense defined by statute, "'the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests

---

[3]    It is unclear on what grounds Petitioner makes this claim. The facts alleged in the habeas petition and supporting documentation call to mind an alleged due process violation; however, Petitioner states that his claim does not implicate an "equal protection analysis." Memo., Page 22. Further, Petitioner states that he does "not allege that [he] was singled out on an impermissible standard such as race . . . ." Id. Nonetheless, the Court will construe this claim as a Fifth Amendment due process violation and review it under the deferential AEDPA standard since it can easily be disposed of on the merits.

entirely in his discretion.'" Id. (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). Of course, a prosecutor's discretion in this regard is subject to constitutional constraints such as the Due Process Clause of the Fifth Amendment, which forbids the prosecutor from making a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification. United States v. Al Jibori, 90 F.3d 22, 25 (2d Cir. 1996) (citation omitted).

In the context of a claim based on selective prosecution or enforcement, the plaintiff must demonstrate (1) that, "compared with others similarly situated, [he] was selectively treated; and (2) [that] such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996), accord Harlen Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001); Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000). No evidentiary hearing or discovery is mandated unless the district court, in its discretion, finds that both prongs of the test have been met. United States v. Sun Myung Moon, 718 F.2d 1210 (2d Cir. 1983) (holding that the district court did not abuse its discretion in holding that appellants failed to demonstrate the necessary factual predicates for their claim of selective prosecution) (citing United

States v. Ness, 652 F.2d 890, 892 (9th Cir.), cert. denied, 454 U.S. 1126 (1981); United States v. Catlett, 584 F.2d 864, 866 (8th Cir. 1978); United States v. Berrios, 501 F.2d 1207, 1211-12 (2d Cir. 1974); accord United States v. Fares, 978 F.2d 52, 59 (2d Cir. 1992).

Here, Petitioner claims that he was a victim of selective prosecution insomuch as his girlfriend –– who he contends also engaged in sexual acts with the minor victim –– was not similarly prosecuted due to the "personal interest" the prosecutor had "in the relationship existing between [Botcha] and the [victim]." Memo., 22. Petitioner concedes, however, that the alleged selective prosecution was not based on an "impermissible standard," but rather on the prosecutor's "own personal agenda." Memo., 22-23. Such a concession –– which bears no relation to an impinged -upon right protected by the federal constitution -- is fatal to Petitioner's claim. Thus, the Court cannot find that the state court's adjudication of this issue contravened settled Supreme Court law. The claim is dismissed.

## 5. VIOLATION OF RIGHT TO COUNSEL (GROUND FOUR)

Petitioner asserts that his jailhouse conversations with the victim were secured, and subsequently used against him at trial, in violation of his Sixth Amendment right to counsel. Pet. ¶13, Ground VI. More specifically, he argues that the statements were taken and used in contravention of the Supreme Court holding in

<u>Massiah v. United States</u>.[4] Petitioner raised this claim on direct appeal, and it was rejected on the merits.

In <u>Massiah</u>, the Supreme Court held that once a defendant's Sixth Amendment right to counsel attaches, the government may not "deliberately elicit[]" inculpatory information from the defendant "in the absence of counsel," and explicitly applied this prohibition to the use of undercover agents or government informants for the purposes of obtaining such statements. <u>See</u> <u>Massiah</u>, 377 U.S. 201, 206-07 (1964).

The Court of Appeals for the Second Circuit has explained that "the <u>Massiah</u> rule covers only those statements obtained as a result of an intentional effort on the part of the government, so information gotten before the inmates become agents/informants is not protected by the rule." <u>United States v. Stevens</u>, 83 F.3d 60, 64 (2d Cir. 1996). Moreover, the <u>Massiah</u> rule does not apply to statements made completely voluntarily by an accused. <u>Id.</u> (citing <u>United States v. Accardi</u>, 342 F.2d 697, 701 (2d Cir.), <u>cert.</u> <u>denied</u>, 382 U.S. 954 (1965)).

The Appellate Division's rejection of Petitioner's claim is not contrary to the above principles.

Here, the statements Petitioner made to the victim, over the prison telephone, were not obtained as a result of an intentional effort on the part of the government. Rather, the record reflects

---

[4]    <u>Massiah v. United States</u>, 377 U.S. 201 (1964).

that the Petitioner voluntarily called the victim -- in direct violation of an existing Order of Protection prohibiting him from doing so -- and voluntarily made statements to her that were subsequently used against him at trial.[5]  There is nothing in the record that suggests the prison recorded these conversations at the request of the prosecution, or that the victim was acting on behalf of or at the behest of the prosecution when she spoke with Petitioner.

Accordingly, the Court cannot find that the Appellate Division's adjudication of this claim contravened settled Supreme Court law.  The claim is dismissed.

## 6.  CUMULATIVE JUDICIAL ERRORS (GROUND SIX)

Petitioner contends that "cumulative judicial errors" deprived him of his constitutional right to a fair trial.  Pet. ¶13, Ground VI.  He bases this claim, *inter alia*, on the following:  that the trial court failed to give a curative instruction related to uncharged bad act evidence admitted through the playing of the jailhouse conversations, namely the age of Petitioner's girlfriend. Petitioner raises this claim for the first time in the habeas petition.  Although Petitioner's claim is unexhausted, it is

---

[5]     That the calls were placed to the victim and that a conversation occurred were introduced at trial to prove the criminal contempt charges.  The content of the conversations were admitted at trial as evidence of Petitioner's consciousness of guilt on the rape charges.

patently frivolous,[6] and, as such, this Court will dismiss it notwithstanding Petitioner's failure to fully exhaust it in the state courts. See 28 U.S.C. § 2254(b)(2).

Petitioner contends that the playing of certain portions of the recorded jailhouse conversations at trial may have led the jury to infer that Petitioner's girlfriend was also fourteen-years-old. He further contends that such an inference was prejudicial because it caused the jury to conclude that "Petitioner had a propensity for having sex with underage women." Addendum to Pet., Page 16. This claim fails on its face insomuch as it is based entirely on speculation. Moreover, it is unsubstantiated by the record, which shows that there was no evidence of the actual age of Petitioner's girlfriend presented at trial. T.T. 344.

Accordingly, habeas relief is not available to Petitioner, and the claim is dismissed.

## V. Conclusion

For the reasons stated above, the petition for a writ of

---

[6] The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. See, e.g., Love v. Kuhlman, No. 99 Civ. 11063, 2001 U.S. Dist. LEXIS 22572 (S.D.N.Y. Dec. 12, 2001); Cruz v. Artuz, No. 97 Civ. 2508, 2002 U.S. Dist. LEXIS 11150 (E.D.N.Y. June 24, 2002); Toland v. Walsh, No. 02 Civ. 0399, 2008 U.S. Dist. LEXIS 24616 (N.D.N.Y. Mar. 26, 2008); Hammock v. Walker, 224 F. Supp. 2d 544 (W.D.N.Y. 2002). A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim. See Hernandez v. Lord, No. 00 Civ. 2306, 2000 U.S. Dist. LEXIS 10228 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard) (internal quotation marks omitted). Under either of these standards, Petitioner's claims are meritless.

habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:     March 2, 2010
           Rochester, New York